# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

AARON CASTRO,

    *Petitioner*,

vs.

JAMES SCHOMIG, *et al.*,

    *Respondents*.

2:04-cv-01652-RLH-RJJ

ORDER

This represented habeas matter under 28 U.S.C. § 2254 comes before the Court for a decision on the merits.  Petitioner Aaron Castro seeks to set aside his 1999 Nevada state court conviction, pursuant to a jury verdict, of sexual assault with a minor under sixteen years of age, attempt sexual assault with a minor, four counts of lewdness with a child, and two counts of misdemeanor child abuse.

### *Governing Standard of Review*

The Antiterrorism and Effective Death Penalty Act (AEDPA) imposes a "highly deferential standard for evaluating state-court rulings."  *Lindh v. Murphy*, 521 U.S. 320, 333 n. 7, 117 S.Ct. 2059, 2066 n.7,138 L.Ed.2d 481 (1997).  Under this deferential standard of review, a federal court may not grant habeas relief merely on the basis that a state court decision was incorrect or erroneous.  *E.g., Clark v. Murphy*, 331 F.3d 1062, 1067 (9th Cir. 2003).  Instead, under 28 U.S.C. § 2254(d), the federal court may grant habeas relief only if the decision: (1) was either contrary to or involved an unreasonable application of clearly

1  established federal law as determined by the United States Supreme Court; or (2) was based

2  on an unreasonable determination of the facts in light of the evidence presented in the state

3  court. *E.g.*, *Mitchell v. Esparza*, 540 U.S. 12, 15, 124 S.Ct. 7, 10, 157 L.Ed.2d 263 (2003).

4      A state court decision is "contrary to" law clearly established by the Supreme Court only

5  if it applies a rule that contradicts the governing law set forth in Supreme Court case law or

6  if the decision confronts a set of facts that are materially indistinguishable from a Supreme

7  Court decision and nevertheless arrives at a different result. *E.g., Mitchell,* 540 U.S. at 15-16,

8  124 S.Ct. at 10.  A state court decision is not contrary to established federal law merely

9  because it does not cite the Supreme Court's opinions. *Id.*  Indeed, the Supreme Court has

10  held that a state court need not even be aware of its precedents, so long as neither the

11  reasoning nor the result of its decision contradicts them. *Id.*  Moreover, "[a] federal court may

12  not overrule a state court for simply holding a view different from its own, when the precedent

13  from [the Supreme] Court is, at best, ambiguous." *Mitchell*, 540 U.S. at 17, 124 S.Ct. at  11.

14  For, at bottom, a decision that does not conflict with the reasoning or holdings of Supreme

15  Court precedent is not contrary to clearly established federal law.

16      A state court decision constitutes an "unreasonable application" of clearly established

17  federal law only if it is demonstrated that the state court's application of Supreme Court

18  precedent to the facts of the case was not only incorrect but "objectively unreasonable." *E.g.,*

19  *Mitchell*, 540 U.S. at 18,124 S.Ct. at 12; *Davis v. Woodford*, 333 F.3d 982, 990 (9th Cir. 2003).

20      To the extent that the state court's factual findings are challenged intrinsically based

21  upon evidence in the state court record, the "unreasonable determination of fact" clause of

22  Section 2254(d)(2) controls on federal habeas review. *E.g., Lambert v. Blodgett*, 393 F.3d

23  943, 972 (9th Cir. 2004).  This clause requires that the federal courts "must be particularly

24  deferential" to state court factual determinations. *Id.*  The governing standard is not satisfied

25  by a showing merely that the state court finding was "clearly erroneous."  393 F.3d at 973.

26  Rather, the AEDPA requires substantially more deference:

27          . . . . [I]n  concluding that a state-court finding is unsupported by
           substantial evidence in the state-court record, it is not enough that
28          we would reverse in similar circumstances if this were an appeal

1
2
3

> from a district court decision. Rather, we must be convinced that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record.

*Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir. 2004); *see also Lambert*, 393 F.3d at 972.  If the state court factual findings withstand intrinsic review under this deferential standard, they then are clothed in a presumption of correctness under 28 U.S.C. § 2254(e)(1); and they may be overturned based on new evidence offered for the first time in federal court, if other procedural prerequisites are met, only on clear and convincing proof.  393 F.3d at 972.

The petitioner bears the burden of proving by a preponderance of the evidence that he is entitled to habeas relief.  *Davis*, 333 F.3d at 991.

### Discussion

### Ground 1:  Denial of a Continuance

In Ground 1, petitioner alleges that he was denied due process, a fair trial, and effective assistance of counsel when the state trial court denied a *pro se* oral motion for a continuance that he made, in lieu of a pending motion to dismiss his counsel, on the morning of the first day of trial, on April 12, 1999.  Castro requested the continuance so that his counsel could pursue additional steps that petitioner believed were necessary for his defense.

Castro was charged by criminal complaint in July 1997.  Following his arrest, he appeared initially in the justice court, without counsel, on August 21, 1997.  At some point prior to September 11, 1997, he retained Paul Wommer as his counsel.[1]

Wommer served as Castro's defense counsel for approximately seven months.  During this time Wommer, *inter alia*, represented Castro at the preliminary hearing held in February 1998, and he secured the dismissal of a number of the original charges brought.  The trial was scheduled for May 11, 1998.[2]

/ / / /

---

[1]#50, Ex. 1.

[2]#50, Exhs. 1-4 & 6.

In April 1998, Wommer moved to withdraw as counsel.  Wommer's supporting affidavit stated that there had been a lack of effective communication with Castro and that he therefore could not effectively represent him.  Castro stated later during his request for a continuance that he had not been able to afford Wommer's services after he was taken back into custody.  The public defender was appointed to represent Castro after Wommer was allowed to withdraw.  The trial was reset for June 22, 1998.[3]

The public defender also had to withdraw a short time thereafter, however, due to a conflict of interest.  The defender's office was allowed to withdraw on May 21, 1998.[4]

In the same proceeding, Lizzie Hatcher was appointed as replacement counsel.  At Hatcher's request, the trial date was reset for August 31, 1998.[5]

Hatcher served as Castro's defense counsel for approximately six months.  During this time period, Hatcher, *inter alia*, filed an opposition to the State's motion to admit evidence of other crimes, argued the motion and secured an evidentiary hearing on the motion to be held prior to jury selection, sought a reduction of bail, secured the appointment of an investigator, obtained an order for a psychiatric evaluation of Castro to assess his competency, and obtained an order for a polygraph examination of Castro.  In August 1998, Hatcher secured a continuance of the trial to November 23, 1998, in order to obtain additional time to prepare both for the trial and the evidentiary hearing.[6]

Castro, however, was not satisfied with Hatcher's performance.  Castro filed a *pro se* memorandum on October 16, 1998.  He alleged, *inter alia*, that Hatcher had failed to communicate with him and that she had failed to take an extensive but mostly conclusory list of actions that Castro maintained were necessary for his defense.  Castro requested a stay

---

[3]#50, Ex. 2, at 3-4; Ex. 7.  Castro had been released on bail initially, but a purported girlfriend withdrew the collateral that she had supplied for his bond, resulting in his return to custody.  *Id.*, Ex. 6, at 2-3.

[4]#50, Ex. 2, at 5-6; Ex.  9.

[5]#50, Ex. 2, at 5-7; Ex. 10.

[6]#50, Ex. 2, at 6-11; Exhs. 11, 13, 16 & 17.

-4-

of proceedings until he was provided adequate legal assistance "or until defendant obtains counsel of his choosing, to be financed by the courts."  On October 27, 1998, petitioner filed a motion to dismiss counsel and appoint alternate counsel.  Petitioner again alleged that Hatcher had failed to communicate with him, and he listed numerous alleged failures by counsel.[7]

At a November 5, 1998, hearing, Hatcher represented to the state district court that she had spoken with Castro and that they had resolved their differences.  His motion to dismiss counsel was held in abeyance pending a determination of his competency status.  At a November 19, 1998, calendar call, Hatcher requested a continuance of the motion while she reviewed a pending plea offer with Castro.  The November 23, 1998, trial date was continued again at this point without a definite date but with the possibility of being reset for December 3, 1998.[8]

On November 25, 1998, Hatcher and Castro both were present for argument on his motion to dismiss counsel.  Hatcher stated that she was ready for trial.  Castro maintained that Hatcher had failed to represent him in the manner that he wanted.  The state district court stated to Castro, *inter alia*, that his allegations regarding Hatcher were untrue and unfounded and further that he was entitled to counsel but not to counsel of his choice.  The court nonetheless stated that it would appoint new counsel for the last time.  The court accordingly relieved Hatcher as counsel on the basis that she and Castro no longer could work together.[9]

William Wolfbrandt was appointed as replacement counsel.  Two weeks later, after he had reviewed the file, the evidentiary hearing on the State's motion to admit evidence of other crimes was set for February 26, 1999, and the trial date was reset for April 5, 1999.[10]

/ / / /

---

[7]#50, Exhs. 12 & 14.

[8]#50, Ex. 2, at 9-10.

[9]#50, Ex. 2, at 11.

[10]#50, Ex. 2, at 11- 13.

When the matter came on for the evidentiary hearing on February 26, 1999, counsel for the State was not ready to proceed.  Counsel for the State mistakenly had not subpoenaed her witnesses because she erroneously had assumed that the evidentiary hearing would be held in conjunction with the trial.  There is no indication in the state court minutes that defense counsel – as opposed to counsel for the State – was not fully prepared to go forward with the evidentiary hearing on that date.  The evidentiary hearing was reset for Monday, April 5, 1999,  and the trial for Wednesday, April 7, 1999, as the first trial setting on the docket.[11]

Castro again was not satisfied with his counsel.  The state court clerk filed his *pro se* motion to dismiss counsel and appoint alternate counsel on March 29, 1999, eight days before the then-scheduled April 7, 1999, trial date.  Castro asserted, *inter alia*, that Wolfbrandt had not responded to any of his phone messages or any of his father's messages during the representation, that counsel had given him the "cold-shoulder" at court hearings when Castro had requested that he counsel visit him to discuss the case, and that counsel had failed to take a long list of actions.[12]

At a March 31, 1999, calendar call, Wolfbrandt represented to the state district court that the reason for Castro's motion was because counsel had not been able to meet with him at the jail because he had been moving his office.  The move had not been completed, but his telephones had been moved by that time.  The minutes reflect that Wolfbrandt stated that he was ready for the evidentiary hearing but that he was "not was ready as he wants to be for the trial."  The state court maintained the evidentiary hearing date, but the court moved the trial back five days from Wednesday April 7, 1999, to Monday April 12, 1999, apparently to give defense counsel additional time for trial preparation.[13]

/ / / /

---

[11]#50, Ex. 2, at 14.

[12]#50, Ex. 21.

[13]#50, Ex. 2, at 15.

1      The evidentiary hearing was held on April 5, 1999.  Review of the hearing transcript

2 does not reflect that Wolfbrandt was unprepared for the hearing.  He was able to obtain a

3 partially favorable ruling on the State's motion that limited the circumstances under which

4 certain evidence could be admitted.[14]

5      The matter came on for trial on Monday, April 12, 1999.  Wolfbrandt announced ready

6 for trial but advised that Castro wanted to address the court.  Castro represented to the court

7 that he had met extensively with Wolfbrandt the night before, that he now had no problem

8 with Wolfbrandt, and that he was requesting a thirty day continuance to allow Wolfbrandt to

9 pursue defense steps that Castro believed needed to be pursued.  The state trial court,

10 outside the presence of the waiting jury venire, engaged in an extended discussion --

11 spanning eighteen pages of the transcript -- of Castro's continuance request.  The state court

12 allowed Castro to detail extensively the steps that he believed needed to be taken on his

13 defense, including an extended discussion outside the presence of counsel for the State.[15]

14      Castro requested a continuance to pursue the following six steps.

15      First, he wanted a psychological examination to determine the reliability and

16 trustworthiness of the testimony of the child victims, in light of Castro's assertion that their

17 recollections must have been coerced or suggested by the investigating officers.  Castro

18 spoke at length about alleged coercion by the detectives of Daniel Elser, a witness who was

19 eighteen years old at the time of the trial.  Castro asserted, *inter alia*, that "I think it's good to

20 assume that these other [younger] victims were treated in the exact same way."[16]

21      Second, Castro wanted an independent investigation of the techniques used in

22 obtaining the victim's statements.  Castro asserted that the police had taken statements from

23 the victims only after conducting seven hours of group discussions, after their recollections

24 and testimony had been contaminated by the group discussion.  #51, Ex. 23, at 15-16.

25

26    [14]#50, Ex. 2, at 16-17; #51, Ex. 22.

27    [15]#50, Ex. 2, at 17-18; #51, Ex. 23, at 4-22.

28    [16]#51, Ex. 23, at 12-14.  See also #52, Ex. 27, at 126 (re: age of victim at trial).

1      Third, Castro wanted a second psychological evaluation of his own competency:

2
3              And basically what I'm feeling is I'm feeling that we should
       have a psychological and psychiatric evaluation also, not only on
4      the victims, but on myself also. Ms. Hatcher has one in here, I
       guess a psychiatrist or psychologist, *and one of the main*
5      *concerns with Hatcher* was the fact that I've asked for one, and
       he came in three minutes. I mean, literally, he was in there three
6      minutes, asked me my age, asked me my – why I was in there,
       what charges I was on, and he got up and left.  He made a two-
7      page report on that psychological evaluation, and I feel that was
       improper, that was insufficient for the charges that I'm being
8      charged with, *and that is one of my complaints in my points and*
       *authorities for dismissing Hatcher.*

9      #51, Ex. 23, at 16 (emphasis added).

10     Fourth, Castro wanted counsel to have an investigator "follow various leads that I

11     wanted him to do."  He asserted:

12             There are various avenues we can go on.  A private
       investigator would have helped out a lot in this case looking up
13     different – my different leads, interviewing different witnesses,
       interviewing my witnesses for the case, a list of witnesses that I
14     wanted to interview for this case, *to try to bring in some evidence*
       *of my character, evidence of my general well-being, my employer*
15     *my time records, which would weigh a lot in the testimony.*

16     #51, Ex. 23, at 17 (emphasis added).[17]

17     Fifth, Castro wanted unspecified expert witnesses retained.[18]

18     Sixth, Castro sought a thirty-day continuance of the trial to pursue "several motions for

19     dismissal of all my charges due to prosecutorial misconduct."  He asserted:

20             . . . .  Basically I've got a motion written out in my room,
       and it indicates a lot of the prosecution prejudicing all the
21     witnesses or various witnesses.  And I've wanted the private
       investigator to interview these actual witnesses,  potential
22     witnesses, or have a hearing outside the presence of the jury to
       indicate whether there was a prejudicing of all the witnesses of
23     this case or some witnesses of this case.

24     #51, Ex. 23, at 17-18.

25     _____

26     [17]Petitioner asserts that "the trial court mistakenly believed Mr. Castro requested the continuance so
       that he could present character evidence." #48, at 12, lines 2-3.  This assertion of trial court error is refuted by
27     the record.  Castro clearly requested more time in part "to try to bring in some evidence of my character."

28     [18]See #51, Ex. 23, at 5.

                                        -8-

1    Castro further described another motion to dismiss that his prior counsel had declined

2    to file at his request:

3
4              There was a dismissal [motion] for an unauthorized person
               in the courtroom during preliminary hearings, and that was – I
5              wanted that handled last year right after the preliminary hearings,
               but Ms. Hatcher failed to entertain it, and basically that's the
6              victims' boyfriend – I mean the victims' stepfather.  Well, I don't
               think they're married, but it's their guardian was in the courtroom.
7              The bailiff actually walked back to him and told him you can't be
               making signals to these individuals, and he was allowed to stay
8              through the whole course of the preliminary hearing.  And he is a
               potential witness of this case, and he was allowed to sit in on all
9              the victims, on various other witnesses, on the detectives.  He
               was – actually sat in the courtroom, and he actually was making
10             signals to the victims, and I've wanted that – I've been wanting
               that since last year.

11   #51, Ex. 23, at 18.

12         Wolfbrandt represented to the state trial court that he talked on several occasions with

13   Castro on the phone as well as every time that they had been to court.  Castro acknowledged

14   that he had talked with Wolfbrandt "on the phone several times, like he stated," but Castro

15   maintained that he could not communicate about the case because the calls allegedly were

16   monitored.  Wolfbrandt stated that he had done a large amount of work on the case away

17   from and independent of Castro and that he had all of Hatcher's file.  He further stated that

18   "[q]uite frankly, a lot of the things that I felt that he was asking me about were matters that I

19   didn't feel were necessary to do as far as pretrial motions and stuff," although he

20   acknowledged the case law relied upon by Castro regarding victim psychiatric evaluations.

21   Wolfbrandt stated that it was his opinion that, as a tactical matter, the points raised by Castro

22   could be used in cross-examining the State's witnesses.[19]

23         Wolfbrandt further noted as follows regarding expert witnesses:

24
25              . . . . There was some concern [expressed] over needs for
               experts on behalf of the defense since the State has identified two
26             experts.  I can tell the Court, though, that we've discussed the
               one expert, who is the nurse, and what we expect her to testify to

27   _____

28      [19]#51, Ex. 23, at 6-7, 8 & 14-15.

1   is testimony that's actually favorable to the defendant and that it
2   would be cumulative for us to get an expert to say the same thing
    that [the] State's expert is going to say.

3           As far as the other individual, Mr. Young from the FBI, it's
    my understanding from the State that they have no intention of
4   calling him as a witness in their case in chief but could reserve
    him for – or would reserve him for rebuttal if something occurs
5   which would require that.  And so, with that in mind, I don't see
    where we would need an expert along those lines either, and I
6   never have seen where we needed an expert in this case.

7   #51, Ex. 23, at 8.[20]

8           The prosecutor, before leaving the courtroom, represented to the state trial court, with

9   regard to a psychological evaluation of the victims, that the State had no intention of

10  presenting psychological or psychiatric testimony in its case-in-chief.  The prosecutor further

11  noted that the case did not turn upon the testimony of a single child and that there instead

12  was corroborating testimony by four different children.  The prosecutor maintained that there

13  was no factor placing the reliability or veracity of the victims in question.  He accordingly

14  argued that any defense motion for a psychological evaluation of the children would have

15  been denied.[21]

16          The state trial judge, prior to hearing from Castro outside the presence of the State,

17  noted that he had observed counsel's performance at the evidentiary hearing a week before

18  and that, in his view, counsel "did a very good job in that representation in terms of being

19  prepared and understanding the subject matter."  The judge did not rely exclusively on this

20  observation of counsel, however, and he first heard Castro's above-described concerns.[22]

21          After hearing all of Castro's concerns, the trial judge noted, first, that the record of

22  Castro's argument on the continuance request indicated (as the examining psychologist also

23  earlier had found) that Castro was competent to stand trial. #51, Ex. 23, at 19 & 20.

24

25          [20]See also *id.*, at 9 (confirming representation by the State).  FBI Agent Young never testified for the
26  State, either in its case-in-chief or rebuttal.

27          [21]#51, Ex. 23, at 10.

28          [22]#51, Ex. 23, at 11-12.

1     With regard to the request for further investigation, the judge noted that the case was

2   not going to be tried based upon character evidence and that such evidence would not have

3   been admitted.[23]

4     As to psychological evaluations of the victims, the judge indicated that, although it was

5   a closer call, the court would not be favorably disposed to such a motion given the relatively

6   older age of the victims and further given that the incidents were not isolated in character and

7   conduct.[24]

8     With regard to expert witnesses, the judge noted, *inter alia*, that, based upon what he

9   understood about the case at that point, it did not appear that the defense would be entitled

10   to the experts that he was requesting.[25]

11     Finally, with regard to Castro's overall argument as to alleged coercion of the victims,

12   the judge noted that Castro's counsel likely had reviewed the same discovery materials that

13   Castro had reviewed and could inquire into such matters on cross-examination.[26]

14     The judge accordingly denied the *pro se* motion for a continuance.

15     On direct appeal, the Supreme Court of Nevada affirmed on the following grounds:

16

17         Appellant . . . contends that the district court abused its
         discretion in denying his motion to continue the trial.   This
18         argument . . . lacks merit.  "It is well settled that the granting of a
         motion to continue is within the sound discretion of the trial court."
19         Doleman v. State, 107 Nev. 409, 416, 812 P.2d 1287, 1291
         (1991)(citing McCabe v. State, 98 Nev. 604, 655 P.2d 536 (1982);
20         Johnson v. State, 90 Nev. 352, 526 P.2d 696 (1974)).  "Whether
         the denial of a continuance is arbitrary must be determined from
21         the circumstances present in every case, particularly those
         presented to the trial judge at the time the request is denied."
22         Johnson, 90 Nev. at 353, 526 P.2d at 697 (citing Ungar v.
         Sarafite, 376 U.S. 575, 589 (1964)).  This court is not inclined "to
23         allow last-minute proceedings to delay the commencement of a

24   _____

   [23]#51, Ex. 23, at 19-20.  Again, Castro's assertion that the state court was mistaken in the belief that
25   he was seeking to develop and introduce character evidence is refuted by the record.  See note 17, *supra*.

26   [24]#51, Ex. 23, at 20.

27   [25]*Id.*, at 21.

28   [26]*Id.*, at 20 & 21.

-11-

<blockquote>
trial." Id. (citing Howard v. Sheriff, 83 Neva. 150, 153, 425 P.2d 596, 598 (1967)).   After reviewing the record, we are not persuaded that a continuance was warranted.  Accordingly, we conclude that the district court did not abuse its discretion in denying the motion to continue.
</blockquote>

#52, Ex. 41, at 2-3.

The Nevada Supreme Court's rejection of the petitioner's claim was neither contrary to nor an unreasonable application of clearly established federal law as determined by the United States Supreme Court.

The decision cited by the state high court, *Ungar v. Sarafite*, 376 U.S. 575, 84 S.Ct. 841, 11 L.Ed.2d 921 (1964), appears to be one of only two decisions by the Supreme Court pertaining to the denial of a motion for a continuance within the past forty-four years.

In *Ungar*, the Supreme Court stated the governing standard as follows:

<blockquote>
The matter of continuance is traditionally within the discretion of the trial judge, and it is not every denial of a request for more time that violates due process even if the party fails to offer evidence or is compelled to defend without counsel. Avery v. Alabama, 308 U.S. 444, 60 S.Ct. 321, 84 L.Ed. 377. Contrariwise, a myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality. Chandler v. Fretag, 348 U.S. 3, 75 S.Ct. 1, 99 L.Ed. 4. There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied. Nilva v. United States, 352 U.S. 385, 77 S.Ct. 431, 1 L.Ed.2d 415; Torres v. United States, 270 F.2d 252 (C.A.9th Cir.); cf. United States v. Arlen, 252 F.2d 491 (C.A.2d Cir.).
</blockquote>

376 U.S. at 589-90, 84 S.Ct. at 849-50.

Thereafter, in *Morris v. Slappy*, 461 U.S. 1, 103 S.Ct. 1610, 75 L.Ed.2d 610 (1983), the high court rejected a habeas petitioner's claim that he had been denied due process by a state district court's denial of his *pro se* mid-trial motion to continue the trial to allow his defense counsel more time to prepare.  In *Morris*, the Court echoed and expanded upon *Ungar*:

<blockquote>
Not every restriction on counsel's time or opportunity to investigate or to consult with his client or otherwise to prepare for trial violates a defendant's Sixth Amendment right to counsel.
</blockquote>

-12-

> *See Chambers v. Maroney*, 399 U.S. 42, 53-54, 90 S.Ct. 1975,
> 1982-1983, 26 L.Ed.2d 419 (1970).   Trial judges necessarily
> require a great deal of latitude in scheduling trials.  Not the least
> of their problems is that of assembling the witnesses, lawyers,
> and jurors at the same place at the same time, and this burden
> counsels against continuances except for compelling reasons.
> Consequently, broad discretion must be granted trial courts on
> matters of continuances; only an unreasoning and arbitrary
> "insistence upon expeditiousness in the face of a justifiable
> request for delay" violates the right to the assistance of counsel.
> *Ungar v. Sarafite*, 376 U.S. 575, 589, 84 S.Ct. 841, 849, 11
> L.Ed.2d 921 (1964).

461 U.S. at 11-12, 103 S.Ct. at 1616.  In denying relief, the Supreme Court noted that"[i]n the

face of the unequivocal and uncontradicted statement by a responsible officer of the court that

he was fully prepared and 'ready' for trial, it was far from an abuse of discretion to deny a

continuance."  461 U.S. at 12, 103 S.Ct. at 1616.

The Nevada Supreme Court's rejection of Castro's claim was neither contrary to nor

an unreasonable application of the foregoing Supreme Court case law.[27]

The state trial court in this case was presented with a *pro se* request for a continuance

made on the morning of trial by a represented defendant in a prosecution that had been

---

[27]Petitioner argues the claim under a four-factor analysis set forth in *Armant v. Marquez*, 772 F.2d
552 (9th Cir. 1985), and the petitioner's argument proceeds as if the Court were conducting *de novo* review of
the claim.  *Armant* was decided more than a decade before the adoption of the AEDPA.  It is established law
that "the *only* definitive source of clearly established federal law under AEDPA is the holdings (as opposed to
the dicta) of the Supreme Court as of the time of the state court decision."  *Clark v. Murphy*, 331 F.3d 1062,
1069 (9th Cir. 2003)(emphasis in original). While circuit law may be persuasive authority for purposes of
determining whether a state court decision is an unreasonable application of Supreme Court law, only the
Supreme Court's holdings are binding on the state courts and only those holdings need be reasonably applied
by the state courts.  *Id.*  The Supreme Court authorities discussed in the text applied a broad abuse of
discretion standard dependent upon the particular facts presented to the trial judge at the time.  This Court
declines the petitioner's invitation to apply a four-part test derived from a pre-AEDPA Ninth Circuit case as if
this Court were conducting *de novo* review of the state court decision.  Petitioner additionally relies upon
Ninth Circuit decisions concerning continuance issues in federal criminal trials.  These decisions similarly
were not binding upon the Nevada state courts in Castro's case, particularly decisions that were decided well
after his trial and appeal.  Petitioner's burden is to establish that the state court decision was an unreasonable
application of *Ungar* and *Morris*, not circuit authority.

In the same vein, respondents urge that the appropriate standard of review is found in 28 U.S.C. §
2254(d)(2) rather than 28 U.S.C. 2254(d)(1) because Section 2254(d)(1) applies only when the issue involves
application of state law and further because the issue presented on this claim is a purely factual question.
#56, at 15, lines 4-14.  This argument is incorrect on both points.  Without question, the governing standard
on this claim is that the standard for review of application of federal law set forth in Section 2254(d)(1), not the
standard for review on questions of historical fact set forth in Section 2254(d)(2).

-13-

1    pending for nearly two years and that had been continued a number of times previously.

2    Petitioner's defense counsel had stated that he was ready for trial, and he did not agree with

3    the defendant that a continuance was necessary.[28]

4        While Castro focuses upon the duration and extent of Wolfbrandt's representation,

5    Wolfbrandt had the benefit of the investigation and preparation by two prior attorneys,

6    Wommer and Hatcher, over the approximately thirteen months of their combined

7    representation.  Hatcher, in particular, had stated that she was prepared to go to trial on

8    November 25, 1998.  At that time, the case otherwise was postured to go to trial but for

9    Castro's dissatisfaction with counsel.  Wolfbrandt further represented to the state court that

10    he had prepared for trial, albeit not in Castro's presence, and the state court had observed

11    his handling of the evidentiary hearing.  The state trial court thus was presented with a

12    situation where it twice had had the case postured to proceed to trial -- with two different

13    defense counsel stating that they were prepared to go to trial -- but Castro alone was

14    maintaining that further trial preparation was required.  Given the United States Supreme

15    Court's statement in *Morris* that it was "far from an abuse of discretion" to deny a continuance

16    where defense counsel stated that he was ready for trial, it would be at the very least difficult

17    to conclude against this backdrop that the Nevada Supreme Court's rejection of this claim

18    was either contrary to or an unreasonable application of Supreme Court precedent.

19        Moreover, with the exception of psychological evaluation of the child victims, the

20    actions sought by Castro reflected a naive and unrealistic lay perception of how to defend and

21

---

22    [28]Petitioner – in the course of arguing the issue under a pre-AEDPA four-factor test applied in Ninth

23    Circuit case law – focuses instead on the date of the filing of the motion to dismiss counsel eight days prior to the then-scheduled April 7, 1999, trial date.  See note 27, *supra*.  However, no request to continue the case –

24    as opposed to a motion to dismiss counsel – was presented to the state trial court until Castro made a *pro se* oral motion for a continuance on the morning of the trial, with his counsel announcing ready to proceed.  The

25    state district court did not resolve the motion to dismiss counsel immediately on the day that it was filed, but there was no constitutional requirement that it do so.  Moreover, the state court already had a record before it

26    of a defendant who could not get along with a prior appointed attorney based upon allegations regarding prior counsel that the state court had found were untrue and unfounded.  The state court record contained

27    substantial evidence tending to support that assessment by the state trial court.  The state court's assessment tended to be confirmed by Castro's own statement that the "one of the main concerns" that he

28    had with Hatcher was her failure to pursue further an alleged issue as to his own competency.  Plainly, no competent criminal defense attorney would have pursued that issue further based on the record in this case.

1  try a criminal case.  While that naivete might have been understandable in view of the fact

2  that Castro was not an attorney, neither defense counsel nor a state trial court trying to bring

3  a nearly two-year-old case to trial were required to proceed according to his unrealistic

4  perceptions.  For example, Castro believed that extensive further psychiatric examination of

5  his own competency was a necessary defense step, solely because of the seriousness of the

6  charges brought and despite the incongruity of that position with his argument that defense

7  counsel should have consulted with him more extensively on his defense.  Castro further

8  believed, naively, that the case could be resolved, within thirty days, based upon defense

9  motions raising alleged "prosecutorial misconduct" concerning the manner in which the

10 witnesses were interviewed and based upon investigation results and expert testimony

11 presented outside the presence of the jury.  Over and above the fact that any proceedings

12 along such lines would not have been concluded within thirty days, Castro's expectation that

13 the case would thereby have been taken from the jury based upon such motions and expert

14 testimony was wholly unrealistic.  Castro's case was going to be resolved only in a jury trial,

15 and it was not going to be resolved based upon the *pro se* motions to dismiss that he drafted

16 in his jail cell trying to dismiss a prosecution by motion on matters going to credibility.[29]

17     The Court is not persuaded that Castro has demonstrated substantial prejudice from

18 the denial of the continuance vis-à-vis victim psychological evaluations, as is addressed

19

20     [29]The Court notes that nothing in the trial record supports Castro's allegation that the police took

21 statements from the victims after conducting seven hours of group discussions and after their recollections
   allegedly had been contaminated by a group discussion.  The trial record instead is decidedly to the contrary.

22 Castro's additional speculation that "I think it's good to assume that" the other child victims were interviewed
   in the same manner as the custodial interviews of Daniel Elser -- who was charged criminally and was

23 eighteen at the trial – also is not supported by the trial record.  See #51, Ex. 25, at 28-37 & 41-48 (Detective
   Gary Jacobsen); #52, Ex. 26, at 34-43 (Officer Wayne Holman); *id.*, Ex. 26, at 64-66 & 74-76 (Michelle Cox);

24 *id.*, Ex. 26, at 111, 145-50, 153-55 & 159-61 (Phillip Cox); #52, Ex. 27, at 19-20 & 36 (Nicholas Cox); *id.*, Ex.
   27, at 57-58 (Buddy Guy); #52, Ex. 28, at 20-31 (second Jacobsen testimony).  Moreover, the circumstances

25 surrounding Daniel Elser's custodial interviews were fully explored at trial, and he acknowledged in his
   testimony that he had lied to the police at one point about having anal and oral sex with Castro.  See #52, Ex.

26 27, at 150-52, 154-56, 159-62 & 166 (Daniel Elser).  The circumstances regarding Buddy Guy's presence at
   the preliminary hearing similarly was explored in his testimony.  See #52, Ex. 27, at 58 & 67.  In reviewing the

27 trial record, which included extensive cross-examination challenging the circumstances of the witness
   interviews, this Court did not encounter any evidence that, even bolstered by expert testimony, would have

28 produced a pretrial dismissal of the charges against Castro based upon alleged "prosecutorial misconduct."

1   further *infra* on his ineffective assistance claims.  The state district court indicated on this

2   purely state law issue that it was not inclined to grant a motion for victim psychological

3   evaluations in the circumstances presented in this case, and petitioner has not come forward

4   with any nonconclusory argument tending to establish that such a motion would have been

5   granted under the Nevada case law on this issue at the time of the trial.  Further, under

6   *Ungar*, not every denial of a continuance that results in an inability to present evidence

7   violates due process.  376 U.S. at 589, 84 S.Ct. at 849.  Establishing that a defense avenue

8   was not pursued that might have been pursued with a continuance therefore does not

9   necessarily establish a due process violation under clearly established federal law.

10          On the record presented at the time to the state trial court, which gave the matter

11   extensive consideration, the Nevada Supreme Court's holding that the trial court did not

12   abuse its discretion in denying a continuance was neither contrary to nor an unreasonable

13   application of *Ungar* and *Morris*.

14          Ground 1 therefore does not provide a basis for federal habeas relief.[30]

15   **Ground 3(A):   Effective Assistance of Counsel – Communication with Client**

16          In the exhausted portion of Ground 3(A), petitioner alleges that he was denied effective

17   assistance of counsel when trial counsel failed to visit him in jail and failed to communicate

18   with him regarding the defense of his case.  Petitioner alleges that when counsel met with him

19   shortly before trial counsel informed him "that there was not enough time to pursue any

20   _____

21          [30]Petitioner dismissed the next claim, Ground 2, following upon the Court's determination that the
claim was not exhausted.  In Ground 2, petitioner alleged that he was denied due process and a fair trial

22   when the state district court admitted evidence in the State's rebuttal case of the circumstances of his 1990
misdemeanor conviction for disorderly conduct after an officer observed him masturbating while watching

23   young children playing in a public place.  While the Court has held that the claim was not exhausted, the
Court notes the following with regard to the merits of the claim.  *First*, petitioner alleges that neither defense

24   counsel nor the state trial court intervened when the prosecution began cross-examining him regarding the
prior incident.  These allegations are refuted by the state court record, as is discussed in further detail, *infra*,

25   with regard to Ground 3(F).  *Second,* if the claim is exhausted and subject to deferential AEDPA review, the
claim has little, if any, prospect of success under the Ninth Circuit's decision in *Alberni v. McDaniel*, 458 F.3d

26   860, 863-67 (9th Cir. 2006).  The Ninth Circuit held in *Alberni* that the Nevada Supreme Court's rejection of a
due process claim based upon the introduction of other bad acts evidence was not contrary to or an

27   objectively unreasonable application of clearly established federal law because the United States Supreme
Court expressly left the due process issue unresolved as an open question in *Estelle v. McGuire*, 502 U.S.

28   62, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991).

1  avenues to support his defense." #57, at 20.  Petitioner further asserts that the particular
2  attorney has a history of failing to communicate with clients and the courts.  Castro maintains
3  that the failure to communicate prejudiced him because it prevented counsel from presenting
4  a forceful, supported defense on his behalf.

5      The Supreme Court of Nevada rejected the corresponding claim presented to that
6  court on the following basis:

7
8                . . . Castro claims that his counsel was ineffective for failing
         to spend adequate time with Castro to prepare a defense.  Castro
9         claims that his counsel only spent one and a half hours with him
         the night before the trial was to commence.  We conclude that the
10        district court did not err in dismissing this claim without an
         evidentiary hearing.  Castro failed to explain how his counsel's
11        actions were unreasonable and how he was prejudiced by his
         counsel's actions.

12  #53, Ex. 57, at 3 (citation footnote omitted).

13      The state supreme court's rejection of this claim was neither contrary to nor an
14  unreasonable application of clearly established federal law.

15      On a claim for ineffective assistance of counsel, the petitioner must satisfy the two-
16  pronged test of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674
17  (1984). He must demonstrate that: (1) counsel's performance fell below an objective standard
18  of reasonableness; and (2) counsel's defective performance resulted in actual prejudice.  On
19  the performance prong, the question is not what counsel might have done differently but
20  rather is whether counsel's decisions were reasonable from counsel's perspective at the time.
21  In this regard, the reviewing court starts from a strong presumption that counsel's conduct fell
22  within the wide range of reasonable conduct.  On the prejudice prong, the petitioner must
23  demonstrate a reasonable probability that, but for counsel's unprofessional errors, the result
24  of the proceeding would have been different.  *E.g., Beardslee v. Woodford*, 327 F.3d 799,
25  807-08 (9th Cir. 2003)*.*

26      In the present case, Castro presented a largely conclusory claim to the state courts
27  without any supporting specifics tending to establish that he was prejudiced in any particular
28  respect by counsel's alleged failure to communicate with him.  See #53, Ex. 43, supporting

1  memorandum at 7-8; *id.*, Ex. 54.[31]  Under Nevada state post-conviction practice, a petitioner
2  must attach affidavits, records or other evidence supporting the factual allegations of the
3  petition, and he may not present merely an unsubstantiated claim.  *See* N.R.S. 34.370(4).
4  The Nevada Supreme Court hardly acted unreasonably in rejecting the conclusory claim
5  presented in the state courts.

6         Moreover, this Court's preceding extensive discussion of federal Ground 1 reflects the
7  following pertinent to this claim as well:  The state trial court record does not support the
8  petitioner's implication in this Court that counsel informed him that there was no time to
9  pursue "any avenues" whatsoever in support of his defense.  Castro stated to the state trial
10 court that Wolfbrandt stated to him that there was no time to pursue the various steps that
11 *Castro* wanted him to pursue.  Wolfbrandt, however, had conducted trial preparation on his
12 own, announced that he was ready for trial, and stated that he did not believe that many of
13 Castro's suggestions were necessary defense steps.  As this Court's extensive discussion of
14 Ground 1 reflects, Castro has not demonstrated substantial prejudice from counsel's failure
15 to pursue the steps that Castro wanted to him to pursue.

16        The trial court record further reflects, as Castro acknowledged to the state trial court,
17 that counsel sought to communicate with Castro by telephone, but petitioner did not wish to
18 communicate in that fashion.[32]

19        It is established law that a criminal defendant has the right to effective representation
20 by counsel, not a right to a "meaningful relationship" with counsel. *Morris v. Slappy*, 461 U.S.
21 at 14, 103 S.Ct. at 1617; *Plumlee v. Masto*, 512 F.3d 1204, 1210-11 (9th Cir.)(*en banc*), *cert.*
22 *denied*, 128 U.S. 2885 (2008).  The trial court record does not reflect that defense counsel
23 actually was unprepared for trial, and petitioner has not demonstrated prejudice from the
24 failure to pursue Castro's requested defense steps.

25

26        [31]Post-conviction appellate counsel did not pursue all of the allegations made in the state district
27 court on appeal, resulting in a conclusion by this Court that certain claims presented to the state district court
   were not exhausted through to the state supreme court.

28        [32]#51, Ex. 23, at 6-7 & 14-15.

-18-

1   Finally, whether or not defense counsel had communication issues with courts and

2   other clients in another case or cases had absolutely no bearing on the Nevada Supreme

3   Court's rejection of the largely conclusory ineffective assistance claim presented in Castro's

4   case.  The failure to support the conclusory claim in the petition with evidence tending to

5   establish resulting actual prejudice was fatal to the petitioner's claim of ineffective assistance

6   in *his* case.

7   Ground 3(A) therefore does not provide a basis for federal habeas relief.[33]

8   ***Ground 3(B):   Effective Assistance – Pretrial Investigation***

9   In the exhausted portion of Ground 3(B), petitioner alleges that he was denied effective

10  assistance of counsel when trial counsel failed to conduct an adequate and reasonable

11  pretrial investigation.

12  The Supreme Court of Nevada rejected the corresponding claim presented to that

13  court on the following basis:

14  . . . Castro claims that his trial counsel failed to conduct a
    pretrial investigation by failing to: hire a private investigator;
15  interview the victims, witnesses named by Castro, and Castro's
    employers; and investigate the police tactics used to obtain
16  witness statements.  Castro failed to support this claim with
    specific factual allegations.  He did not state what evidence a
17  private investigator would have discovered.  He did not identify
    what witnesses he wanted his counsel to interview or what they
18  would have testified to.  He also failed to articulate what his
    counsel would have uncovered by investigating police tactics.
19  Further, he failed to explain how the result of his trial would have

20

21  [33]Petitioner cites to multiple federal circuit decisions that either arose from federal criminal trials
    and/or that were decided prior to the adoption of the AEDPA.  The Supreme Court of Nevada was not bound
22  to follow federal lower court authority, including Ninth Circuit authority, even if, *arguendo*, otherwise on point.
    The Supreme Court of Nevada is bound to follow only controlling precedent from the United States Supreme
23  Court.  None of the federal circuit decisions cited establish that the Nevada Supreme Court's rejection of
    Castro's claim was either contrary to or an unreasonable application of clearly established federal law *as*
24  *determined by the United States Supreme Court*.  Petitioner relies, *inter alia*, upon the Ninth Circuit's pre-
    AEDPA decision in *Brown v. Craven*, 424 F.2d 1166 (9th Cir. 1970).  However, the Ninth Circuit, sitting *en*
25  *banc*, rejected the underlying premise of *Brown* that the presence of an irreconcilable conflict between client
    and counsel necessitates the conclusion that the client has been denied effective assistance of counsel.
26  *Plumlee*, *supra*.  Given that *Brown* was relied upon in the overturned panel decision in *Plumlee*, the
    precedential value of *Brown* in a case decided under the AEDPA is substantially reduced if not wholly
27  eliminated.  The Nevada Supreme Court's decision further was neither contrary to nor an unreasonable
    application of *Entsminger v. Iowa*, 386 U.S. 748, 87 S.Ct. 1402, 18 L.Ed.2d 501 (1967), where counsel failed
28  to perfect a requested plenary appeal by failing to file the entire trial court record.

-19-

1
2
3

been different had his counsel conducted any desired pretrial investigation.  Therefore, we conclude that the district court did not err in dismissing this claim without an evidentiary hearing because Castro failed to support the claim with specific factual allegations sufficient to establish that he was entitled to relief.

4   #53, Ex. 57, at 2-3 (citation footnote omitted).

5         The state supreme court's rejection of this claim was neither contrary to nor an

6   unreasonable application of *Strickland*.  Castro presented a largely conclusory claim to the

7   state courts without any supporting specifics tending to establish that he was prejudiced in

8   any particular respect by counsel's alleged failure to conduct a more extensive pretrial

9   investigation.  See #53, Ex. 43, supporting memorandum at 9, lines 11-25; *id.*, Ex. 54.[34]  As

10   noted previously, under Nevada state post-conviction practice, a petitioner must attach

11   affidavits, records or other evidence supporting the factual allegations of the petition, and he

12   may not present merely an unsubstantiated claim.   *See* N.R.S. 34.370(4).  The Nevada

13   Supreme Court did not apply *Strickland* unreasonably when it rejected the conclusory claim

14   presented in the state courts.  Under clearly established federal law, a petitioner must do

15   more than merely list alleged failures by counsel; he further must present evidence of

16   resulting prejudice.

17         Even in federal court, petitioner alleges on the exhausted portion of the claim only that

18   counsel's failure to obtain his employment time cards failed to develop what "may have been"

19   alibi and impeachment evidence, without indicating what the time cards would have shown

20   or how such evidence would have affected the trial. #48, at 16.  Such vague speculation does

21   not establish a viable claim of ineffective assistance of counsel.  When Castro referred to his

22   employment time records when he sought a continuance at trial, he did so only in connection

23   with the possible presentation of character evidence, which likely would not even have been

24   admissible.  See text, *supra*, at 8, lines 14-15.  Moreover, given that Castro admitted during

25   his testimony that he was with the various children at the time of the multiple instances of

26

27
28

[34]On federal habeas review, petitioner sought to add a number of particular claims of failure to investigate that were not fairly presented in the conclusory claim raised in the state courts.  These unexhausted claims have been dismissed.

1    misconduct, it would be difficult for Castro to establish that the time cards in fact would have
2    supported an alibi defense that reasonably likely would have affected the outcome of the trial.
3    The trial evidence was not such that a demonstration that Castro was at work at a specific
4    time likely would have any significant impact, as there was no question that Castro repeatedly
5    had access to the children over a long period of time.  Castro disputed what he did, not where
6    he was, during the incidents.[35]

7         The Nevada Supreme Court's rejection of such a conclusory and speculative claim,
8    one that included an alibi allegation such as the above that led nowhere on the trial evidence,
9    was not an objectively unreasonable application of *Strickland*.

10        Ground 3(B) therefore does not provide a basis for federal habeas relief.

11        ***Ground 3(C):   Effective Assistance – Preparation for Trial***

12        In the exhausted portion of Ground 3(C), petitioner alleges that he was denied effective
13   assistance of counsel when trial counsel failed to adequately prepare for trial.  He alleges that
14   counsel failed to develop any defense witnesses to support his assertion of innocence, failed
15   to prepare him for his testimony and to prepare a cohesive direct examination, failed to
16   develop evidence to impeach the complaining witnesses, and failed to prepare for cross-
17   examination of the prosecution witnesses.

18        The state supreme court's rejection of this claim was neither contrary to nor an
19   unreasonable application of *Strickland*.  Castro presented a largely conclusory claim to the
20   state courts without any supporting specifics tending to establish that he was prejudiced in
21   any particular respect by counsel's alleged failure to prepare for trial.  Petitioner did not
22   identify what witnesses should have been called or what their testimony would have
23   established, what additional testimony he would have given with a purportedly more cohesive
24   direct examination, what impeachment evidence should have been developed, or what
25   additional cross-examination should have been pursued.  See #53, Ex. 43, supporting

26
27   _____

28       [35]See #52, Ex. 28, at 49-72, 81-82, 92 & 93.

-21-

memorandum at 9-10 & 12-14; *id.*, Ex. 54.[36]   As noted previously, under Nevada state post-conviction practice, a petitioner must attach affidavits, records or other evidence supporting the factual allegations of the petition, and he may not present merely an unsubstantiated claim.  *See* N.R.S. 34.370(4).  The Nevada Supreme Court did not apply *Strickland* unreasonably when it rejected the conclusory claim presented in the state courts.  Under clearly established federal law, a petitioner must do more than merely list alleged generalized failures by counsel; he must present evidence of resulting prejudice.

Ground 3(C) therefore does not provide a basis for federal habeas relief.[37]

**Ground 3(D):   Effective Assistance – Pretrial Motions**

In the exhausted portion of Ground 3(D), petitioner alleges that he was denied effective assistance of counsel when trial counsel failed to file any pretrial motions.  Petitioner alleges that trial counsel failed to file a request for an investigator "to follow up with information from Mr. Castro," failed to file a motion requesting expert witnesses, and failed to file a motion for a psychological evaluation of the complaining witnesses.[38]

The state supreme court's rejection of this claim was neither contrary to nor an unreasonable application of *Strickland*.  Castro presented a largely conclusory claim to the state courts without any supporting specifics tending to establish that he was prejudiced in any particular respect by counsel's failure to file pretrial motions.  Petitioner did not identify, *inter alia*, what evidence further investigation by an investigator would have produced, what information he allegedly provided to counsel that would have lead to evidence that would have

_____

[36]On federal habeas review, petitioner sought to add a specific claim that trial counsel failed to develop impeachment evidence based on the oldest child allegedly having a history of lying and a possible sexual history.  No such particularized allegation was presented to the state courts, and this unexhausted claim has been dismissed.

[37]As discussed in note 33, *supra*, the Supreme Court of Nevada was not bound to follow the federal circuit decisions cited by petitioner on Ground 3(C) in the federal reply, even if, *arguendo*, otherwise on point.

[38]On federal habeas review, petitioner sought to add a specific claim that trial counsel failed to seek a psychological evaluation of the victims "despite information that the complaining witnesses had been through counseling," seeking to put the ineffective assistance claim on a stronger footing.  No such particularized allegation was presented to the state courts, and this unexhausted claim has been dismissed.

1  altered the outcome at trial, or what defense expert testimony in fact would have established.

2  See #53, Ex. 43, supporting memorandum at 11-12; *id.*, Ex. 54. As noted previously, under

3  Nevada state post-conviction practice, a petitioner must attach affidavits, records or other

4  evidence supporting the factual allegations of the petition, and he may not present merely an

5  unsubstantiated claim. *See* N.R.S. 34.370(4).  The Nevada Supreme Court did not apply

6  *Strickland* unreasonably when it rejected the conclusory claim presented in the state courts.

7  Under clearly established federal law, a petitioner must do more than merely list alleged

8  generalized failures by counsel; he must present evidence of resulting prejudice.  Even in

9  federal court, this claim in the main fails to state a sufficiently particularized claim presenting

10  sufficiently specific allegations of resulting prejudice.

11       Moreover, with particular regard to the failure to request a psychological evaluation of

12  the complaining witnesses, trial counsel's performance must be assessed from the lawyer's

13  perspective at the time, under the case law that then was available.  *See,e.g., Murtishaw v.*

14  *Woodford*, 255 F.3d 926, 950 (9th Cir. 2001); *Lowry v. Lewis*, 21 F.3d 344, 346 (9th Cir. 1994);

15  *United States v. Zweber*, 913 F.3d 705, 712 (9th Cir. 1990).  Thus, the question of whether trial

16  counsel provided ineffective assistance in not filing a request for psychological evaluations

17  must be considered in light of the relevant Nevada case law at the time of the original criminal

18  proceedings from in or around August 1997 through April 1999.

19       Under Nevada state law at the relevant time, a state district court had discretion to

20  grant a request for a psychological evaluation of a child victim, based upon the circumstances

21  of each case, after considering the following four factors: 1) whether the State had employed

22  an expert in psychiatry or psychology to examine the child; 2) whether there was a compelling

23  need to protect the child; 3) whether evidence of the crime had little or no corroboration

24  beyond the child's testimony; and 4) whether there was a reasonable basis to believe that the

25  child's mental or emotional state may have affected their veracity. *See,e.g., Marvelle v. State*,

26  114 Nev. 921, 927-28, 966 P.2d 151, 155 (1998).

27       In the present case, as confirmed by the prosecutor in the argument on the *pro se*

28  motion for a continuance, the State had not employed an expert in psychiatry or psychology

to examine any of the child victims and had no intention of presenting such testimony in its case-in-chief.[39]  Further, as noted by the prosecutor, the case did not turn upon the testimony of a single child and there instead was corroborating testimony by four different children. Moreover, there were no factors placing the reliability or veracity of the victims in question. While Castro suggested in seeking a continuance that the victims had been subjected to extended coaching and suggestive interrogation techniques, petitioner's allegations in this regard were refuted by the trial record and otherwise were wholly unsubstantiated.[40]  Nothing remotely resembling the circumstances mandating a grant of a request for child victim psychological evaluation under the then-existing Nevada case law was presented on the record in Castro's case.[41]

On the record presented, the state trial court observed that, although it was a closer call than the other defense steps that Castro sought in his *pro se* motion for a continuance, the court would not be favorably disposed to a request for psychological evaluations given the relatively older age of the victims and given that the incidents were not isolated in character and conduct.[42]

Petitioner has not come forward with any apposite Nevada state case law establishing that – on the record presented in his case – there was a reasonable probability that a pretrial motion for psychological evaluations of the child victims would have been granted.  The Nevada Supreme Court's rejection of his ineffective assistance claim in this regard was neither contrary to nor an unreasonable application of *Strickland*.

---

[39]#51, Ex. 23, at 10.

[40]See note 29, *supra*.

[41]*Cf. Marvelle*, 114 Nev. at 924, 966 P.2d at 152-53 (the child victim's father ran an escort service and was thought by the victim to be involved in pornography; the father may have molested the child at the time that the defendant allegedly did; the victim said that she and her friend were going to become "madams" following in her father's footsteps; the child victim "was a very troubled young woman" with "an extremely unhappy childhood;" the child victim had a very active sex life which was condoned by her mother so long as she did not engage in sex with adults; and a friend of the victim testified that the victim used drugs, was manipulative, and would lie).

[42]#51, Ex. 23, at 20.

-24-

1    Ground 3(D) therefore does not provide a basis for federal habeas relief.[43]

2    **_Ground 3(E):   Effective Assistance – Expert Witnesses_**

3    In the exhausted portion of Ground 3(E), petitioner alleges that he was denied effective

4    assistance of counsel when trial counsel failed to obtain expert witnesses.

5    The state supreme court's rejection of this claim was neither contrary to nor an

6    unreasonable application of _Strickland_.

7    Castro presented a largely conclusory claim to the state courts without any supporting

8    specifics tending to establish that he was prejudiced in any particular respect by counsel's

9    failure to obtain expert witnesses.  See #53, Ex. 43, supporting memorandum at 10-11; _id._,

10   Ex. 54.  As noted previously, under Nevada state post-conviction practice, a petitioner must

11   attach affidavits, records or other evidence supporting the factual allegations of the petition,

12   and he may not present merely an unsubstantiated claim.  _See_ N.R.S. 34.370(4).  Petitioner

13   did not tender any affidavits or other evidence tending to establish that the defense actually

14   would have been able to present expert testimony of significant exculpatory value at trial.

15   Petitioner alleges that expert testimony could have been obtained to conduct

16   psychological evaluations of the child victims.  However, as discussed above under Ground

17   3(D), petitioner has not come forward with apposite Nevada state case law establishing that

18   – on the record presented in his case – there was a reasonable probability that a pretrial

19   motion for psychological evaluations of the child victims would have been granted.  It is

20   entirely speculative that the defense would have been able to obtain such psychological

21   evaluations, and it further is speculative as to what the evaluations would have tended to

22   establish if they had been permitted by the state district court.[44]

23   _____

24   [43]The Court further would note that it is entirely speculative that any such psychological evaluations
     would have affected the outcome at trial.

25
26   As is discussed, _infra_, under Ground 3(E), Nurse Flynn did not provide psychological or psychiatric
     testimony vouching for the credibility of the child victims.  Even if she had so testified at trial, trial counsel
     would not have known of such trial testimony when considering possible pretrial motions.

27   [44]Petitioner alleges that "Mr. Wolfbrandt's actions were not prompted by strategy, but rather, an

28                                                                                   (continued...)

1        Petitioner further alleges that expert testimony could have addressed issues of

2  coaching and suggestion as to the child victims.  However, as discussed previously under

3  both Grounds 1 and 3(D), Castro's allegations of coaching and suggestive interrogation

4  techniques were refuted by the trial record and otherwise were wholly unsubstantiated.[45]  The

5  Court is not persuaded by the continued repetition of an allegation that is belied and not

6  substantiated by the record.

7        The Court further notes the following with regard to the unexhausted claim in Ground

8  3(E).

9        Petitioner asserts that testimony by Nurse Catherine Flynn "lent a stamp of legitimacy

10  to the claims of the complaining witnesses" and that trial counsel provided ineffective

11  assistance when he failed to obtain an expert to refute her testimony.  #48, at 17; #57, at 24-

12  25.  Nurse Flynn testified – exclusively – regarding her physical examination of the child

13  victims.[46]  She did not provide any psychological or psychiatric opinion testimony, and she did

14  not express an opinion that the victims were telling the truth.  On cross-examination, she

15  acknowledged that the absence of physical findings in her examination also was consistent

16  with an absence of sexual abuse.[47]

17        / / / /

---

[44](...continued)

unwillingness to litigate a difficult issue." #57, at 25, lines 4-5.  Petitioner cites to a portion of the state court minutes – not the transcript – as support for this allegation.  In the minutes, the state court clerk wrote that Wolfbrandt responded, during the discussion of Castro's *pro se* continuance request, that "it is difficult to seek a psychiatric evaluation of the children to determine if there were outside sources as to their testimony." #50, Ex. 2, at 18.  The actual transcript of the proceeding contains no such statement by Wolfbrandt..  See #51, Ex. 23, at 6-8.  Quoting the minutes for an alleged statement by counsel that in fact is not contained in the actual transcript of the proceedings is, at the very least, not a persuasive tactic.  In any event, petitioner's larger hill to climb on this claim was the inability to demonstrate a reasonable probability that a request for psychological evaluations would have been granted and then would have resulted in exculpatory evidence.

[45]See note 29, *supra*, and text at note 40, *supra*.

[46]#52, Ex. 28, at 3-20.  The only history taken or interview conducted by Nurse Flynn was strictly incident to the physical examination.  *Id.*, at 8, 9 & 13-16.

[47]#52, Ex. 28, at 13.

1      During the discussion of Castro's *pro se* continuance request, trial counsel stated the

2  following regarding his decision to not obtain an expert vis-à-vis Nurse Flynn's testimony:

3          . . . . There was some concern [voiced by Castro] over
needs for experts on behalf of the defense since the State has

4  identified two experts [one of which was not called by the State,
as the State had indicated].   I can tell the Court, though, that

5  we've discussed the one expert, who is the nurse, and what we
expect her to testify to is testimony that's actually favorable to the

6  defendant and that it would be cumulative for us to get an expert
to say the same thing that [the] State's expert is going to say.

7  [Counsel then discussed the other expert.]

8  #51, Ex. 23, at 8.

9      The state court record accordingly demonstrates that this claim, even if exhausted, is

10  without merit.  First, the decision to not call an expert vis-à-vis Nurse Flynn's testimony clearly

11  was a considered strategic decision by trial counsel.  Such a considered strategic decision

12  by trial counsel is virtually unassailable under *Strickland*.  *See* 466 U.S. at 681, 104 S.Ct. at

13  2061.  Second, petitioner cannot demonstrate prejudice on this claim because the State's

14  own expert testified that the physical findings also were consistent with an absence of sexual

15  abuse.  Petitioner has not even suggested, much less demonstrated, what a defense expert

16  would have testified to that Nurse Flynn did not state herself.

17      Ground 3(E) does not provide a basis for federal habeas relief.

18      ***Ground 3(F):  Effective Assistance – Failure to Lodge Objections***

19      In the exhausted portion of Ground 3(F), petitioner alleges that he was denied effective

20  assistance of counsel when trial counsel failed to make objections at trial.

21      The state supreme court's rejection of this claim was neither contrary to nor an

22  unreasonable application of *Strickland*.  The claim that Castro presented to the state courts

23  was conclusory to the extreme.  See #53, Ex. 43, supporting memorandum at 15-16; *id.*, Ex.

24  54.  Petitioner did not point to any specific objections that counsel failed to raise, and he did

25  not establish how he was prejudiced by the failure to raise a specific objection.  The Nevada

26  Supreme Court's rejection of this vague and conclusory claim was not an unreasonable

27  application of clearly established federal law.

28      / / / /

-27-

1  The Court further notes the following with regard to the unexhausted claims in Ground

2  3(F).

3  Petitioner alleges in federal court that "[f]irst and foremost, counsel failed to object to

4  the cross-examination by the prosecution regarding the 1990 misdemeanor disturbing the

5  peace conviction." #48, at 18.

6  This claim is directly refuted by the state court record.  What instead happened was

7  that both counsel met with the state trial judge in chambers after the direct examination and

8  before the cross-examination.  This chambers conference was not memorialized for the

9  record until after Castro's cross-examination, but the record indisputably states that the

10  conference occurred prior to the cross-examination.  The State argued that the defense had

11  opened the door to evidence of the September 1990 incident by trying to bolster Castro's

12  character with emphasis on, *inter alia*, his having been accepted to a police academy and

13  having served as a reserve officer.  The State maintained that this testimony tended to

14  suggest that Castro could not have been in trouble prior to that time if he had held these

15  positions.  Defense counsel argued to the contrary. #52, Ex. 29, at 2-4.  The state district

16  judge memorialized his holding in the chambers conference as follows:

17

18  As to the issues before the Court, the Court had indicated
   originally that it would – based upon the nature in terms of
19  aberration, in terms of sexual behavior – would allow the incident
   in the park to come in, our 1990 event.  And after having
19  testimony adduced in the record as to the military, the honorable
20  discharge thereafter, going to the police academy, being a
   reserve police officer, things of that nature, which clearly, whether
21  intentional or unintentional, paint a picture of Mr. Castro.  In one
   light, I thought it was appropriate for the State to be able to depict
22  him in another light.

23  #52, Ex. 29, at 4-5.  Only after obtaining this ruling did the State inquire on cross-examination

24  as to the September 1990 incident.  The State later called Officers Levins in its rebuttal case.

25  Petitioner accordingly is incorrect – on the unexhausted claims both in Ground 2 and

26  Ground 3(F) – when he alleges in this Court that the State simply launched into cross-

27  examination on the September 1990 incident without any intervention by either the state court

28  or defense counsel and that the issue was not argued until after the evidence was already in

-28-

1    on Castro's cross-examination.  These unexhausted allegations and claims are belied by the

2    state court record.  The ineffective assistance claim in Ground 3(F), in particular, lacks any

3    merit even if, *arguendo*, the claim was exhausted.[48]

4         Next, petitioner alleges in federal court that trial counsel provided ineffective assistance

5    when he failed to object to the State recalling Detective Gary Jacobsen in its case-in-chief.

6    Petitioner alleges that "Detective Jacobsen was recalled to fill in gaps left by the direct

7    testimony of the complaining witnesses, and testified extensively to what he was told by one

8    of the complaining witnesses during an interview." #48, at 18.  Petitioner's characterization

9    of the testimony is incorrect.   What Detective Jacobsen testified to was a prior consistent

10   statement by one of the child victims regarding having had oral sex with Castro, following

11   upon an inconsistent statement that was explored during the victim's testimony.[49]  Petitioner

12   has not established that an objection, if made, to such testimony would have been successful.

13   This claim as well is without merit even if, *arguendo*, the claim was exhausted.

14        Ground 3(F) does not provide a basis for federal habeas relief.

15        IT THEREFORE IS ORDERED that the petition for a writ of habeas corpus shall be

16   DENIED on the merits and that the petition shall be DISMISSED with prejudice.

17        The Clerk of Court shall enter final judgment accordingly in favor of respondents and

18   against petitioner.

19        DATED:   September 16, 2008.

20

21

22                                                    _____

23                                                    ROGER L. HUNT
                                                      Chief United States District Judge

24   _____

25   [48]Petitioner, In making these allegations on these claims in federal court, cites to the portion of the
     state court record – #52, Ex. 29, at 2-3 – that directly refutes the allegations. #48, at 14, line 8; #57, at 15, line
26   26.  The Court trusts that counsel simply failed to notice the statements in the record that clearly establish
     that the state court and counsel were memorializing a chambers conference held prior to Castro's cross-
27   examination rather than arguing the issue for the first time only after the cross-examination.

28   [49]#52, Ex. 28, at 20-25.